

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8\27\12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIX RIVERA ET AL.,

                Plaintiff,

        v.

MICHAEL BLOOMBERG,
DEPARTMENT OF CORRECTIONS
(NYC), DORA SCHRIRO, ROBERT T.
WOLF, CORRECTION HEALTH
SERVICES,

                Defendants.

SONNY BLACK ET AL.,

                Plaintiff,

        v.

MICHAEL BLOOMBERG,
DEPARTMENT OF CORRECTIONS
(NYC), DORA SCHRIRO, ROBERT T.
WOLF, CORRECTION HEALTH
SERVICES,

                Defendants.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 629 (PGG)

11 Civ. 4325 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In these Section 1983 cases, pro se plaintiffs Felix Rivera, James Drummond, and

Valarae Green (see Rivera Cmplt.), and Sonny Black and Damont Green (see Black Cmplt.)

(collectively, "Complaints") allege that while incarcerated at the George Motchan Detention

Center and Otis Bantum Correctional Center on Rikers Island they were forced to  consume

unsafe and unsanitary water due to a contaminated water system.[1]  (Rivera Cmplt. and Black

Cmplt. ("Cmplts.") ¶ II(D))  Plaintiffs also claim that the medical department on Rikers Island

did not provide them with proper treatment.  Id.  Defendants have moved to dismiss the

Complaints pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have not alleged a

violation of their constitutional rights, that Plaintiffs fail to allege the personal involvement of

any Defendants in a constitutional violation, that the New York City Department of Correction

("DOC") and Correctional Health Services ("CHS") are not suable entities, and that Plaintiffs

fail to allege facts supporting municipal liability.  (Def. Br. 2-3)  For the reasons stated below,

Defendants' motion to dismiss will be granted.[2]

## BACKGROUND

Plaintiffs' Complaints make nearly identical allegations concerning contaminated

water at Rikers Island.[3]  Plaintiffs allege that

> [d]ue to the water plant and faulty sewage system, health issues and health
> concerns are not being addressed.  It's a continuance, an on going problem, which
> shows negligence and fault by the Department of Corrections.  Deliberate
> indifference by the Department of Corr[ections] to circumvent and conceal the
> contaminated water system, is to the pattern of gross negligence.

(Rivera Cmplt. ¶ II(D))  Plaintiffs claim that "hydrosol, contamina[n]ts" and "strains of

Legionare [sic] ([b]acteria) disease" are found in the water "past and present."  (Id.; Black

Cmplt. ¶ II(D)).  Plaintiffs state that they are "forced to drink said contaminated water via juice

---

[1]  As discussed below, this Court consolidated these cases for purposes of Defendants' motion to dismiss, and the Court will refer to the Complaints collectively unless otherwise noted.  (Rivera Dkt. No. 21; Black Dkt. No. 14)

[2]  While the Complaint names "Robert T. Wolf" as a defendant, it appears that Plaintiffs intended to name Richard T. Wolf, the Executive Director of the Board of Correction.  (See Rivera Dkt. No. 22 (Not. of Mot.))  Accordingly, this Court will refer to this defendant as Richard T. Wolf.

[3]  The Complaints name the same defendants, describe the same facts, and claim the same injuries.  The primary difference between the two complaints is that the Rivera Complaint seeks $6 million while the Black Complaint seeks $3 million.  (Rivera Cmplt.; Black Cmplt.)

drink, [and to use it for] food preparation, [for] [h]yg[i]ene and [for] grooming purposes." (Id.) Due to the Department of Corrections' "deliberate indifference" and "gross negligence," Plaintiffs have suffered "[s]tomach pain[,] vomi[]ting[,] sever[e] headaches[,] [d]ehydration[,] [and] [b]ody aches." (Rivera Cmplt. ¶ III) Finally, Plaintiffs allege that, when they requested medical attention, they were "not…provided with any medical treatment." (Id.) Plaintiffs claim that the "internal records reflecting medical dates" were not properly recorded, "so no medical sick call attendance record" exists. (Id.)

The Complaints indicate that a grievance procedure exists at both the George Motchan Detention Center ("GMDC") and the Otis Bantum Correctional Center ("OBCC"). (Cmplts. ¶ IV(B)) The Black Complaint states that Plaintiffs filed a grievance at the GMDC and that their grievance addressed "[p]rison conditions [c]oncerning the water and inadequate medical care." (Black Cmplt. ¶ IV(E)) The Rivera Complaint states that Plaintiffs filed grievances concerning the same issues at the GMDC and at the OBCC. (Rivera Cmplt. ¶ IV(F)) Both Complaints assert that the issues raised in these grievances are "classified as non[-]grievable." (Rivera Cmplt. ¶ IV(F); Black Cmplt. ¶ IV(E)). Both Complaints also allege that Plaintiffs informed Defendant Dora B. Schriro, Commissioner of the New York City Department of Correction, of their claims. (Rivera Cmplt. ¶ IV(G); Black Cmplt. ¶ IV(F)).

In a December 2, 2011 letter, Defendants requested that the Rivera and Black cases be consolidated for purposes of a motion to dismiss. This Court granted that application. (Rivera Dkt. No. 21; Black Dkt. No. 14) On December 16, 2011, Defendants moved to dismiss

3

the Rivera and Black Complaints. (See Rivera Dkt. No. 22; Black Dkt. No. 15)  The Rivera and

Black Plaintiffs have not responded to the motion to dismiss.[4]

## DISCUSSION

### I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

These factual allegations must be "'sufficient to raise a right to relief above the speculative

level.'"  Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting ATSI Commc'ns,

Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).  "In considering a motion to dismiss

. . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave.

Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead

Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable

inferences in favor of the plaintiff."  Id.  (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir.

2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle NE., Inc., 507

F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

---

[4]  On December 25, 2011, Plaintiff Rivera submitted a letter to this Court reiterating the
Complaint's allegations, but failing to address Defendants' arguments for dismissal  Because the
letter was not served on Defendants, it will not be considered by this Court.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Because Plaintiffs are proceeding pro se, this Court construes their complaints liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("A document filed pro se is to be 'liberally construed.'")). Therefore, this Court reads the Complaints "'to raise the strongest arguments that [they] suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). As in any other case, however, the Court accepts as true only factual allegations, and does not accept as true allegations stating only legal conclusions. Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 U.S. Dist. LEXIS 25652, at *2-3 (S.D.N.Y. Mar. 18, 2010) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].")).

## II.    PLAINTIFFS HAVE FAILED TO ALLEGE A CONSTITUTIONAL VIOLATION

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)

(citing 42 U.S.C. § 1983; Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990)).  To state a claim

under § 1983, a plaintiff must show:  "(1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages."  Rahman, 607 F. Supp. 2d at 584

(citing Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)).  "Section 1983 itself creates

no substantive rights; it provides only a procedure for redress for the deprivation of rights

established elsewhere."  Sykes, 13 F.3d at 519 (citing City of Oklahoma City v. Tuttle, 471 U.S.

808, 816 (1985)).  "In order to prevail on a section 1983 claim, the plaintiff must show that the

defendant's conduct deprived him of a federal right."  Id.  (citing Parratt v. Taylor, 451 U.S. 527,

535 (1981); Daniels v. Williams, 474 U.S. 327, 329-30 (1986); Rand v. Perales, 737 F.2d 257,

260 (2d Cir. 1984)).  Finally, "a civil rights complaint must contain specific allegations of fact

which indicate a deprivation of constitutional rights; allegations which are nothing more than

broad, simple, and conclusory statements are insufficient to state a claim under § 1983."

Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143, at *8-9

(S.D.N.Y. Nov. 1, 2005).

       Construed liberally, Plaintiffs' Complaints allege deliberate indifference to

conditions of confinement and deliberate indifference to serious medical need in violation of the

Due Process Clause of the Fourteenth Amendment.[5]

## A.      Plaintiffs Fail to State a Claim Based on Their Conditions of Confinement

---

[5] Plaintiffs' claims are construed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because Plaintiffs were pre-trial detainees at the time of their alleged injuries. (Def. Br. 5 n.3)  A convicted prisoner is entitled to the protections of the Eighth Amendment's proscription against "cruel and unusual punishment," while a pre-trial detainee held in state custody is protected by the Due Process Clause of the Fourteenth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).  That being said, "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  Id.

### 1.    Applicable Law

"[I]n order for conditions of confinement to constitute a [constitutional] violation

. . . , a prisoner must satisfy a two-part test comprised of both an objective and subjective prong."

Williams v. Carbello, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) (citing Farmer v. Brennan, 511

U.S. 825, 834 (1994)).  First, "the deprivation alleged by the prisoner must be in objective terms

'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's

necessities.'" Branham v. Meachum, 77 F. 3d 626, 630-31 (2d Cir. 1996) (quoting Wilson v.

Seiter, 501 U.S. 294, 298 (1991)).  Second, "the prison officials must have acted with deliberate

indifference in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or

safety.'"  Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

"To satisfy the objective prong, a prisoner must demonstrate that he has been

denied basic human needs, such as food, clothing, shelter, medical care, and reasonable safety, or

has been exposed to conditions that pose an unreasonable risk of serious damage to his future

health." Williams, 666 F. Supp. 2d at 378 (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir.

2002)).  "Because society does not expect or intend prison conditions to be comfortable, only

extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." Blyden v.

Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

To satisfy the subjective prong, a plaintiff must plead facts demonstrating that a

defendant acted with a "'sufficiently culpable state of mind'"; "[i]n prison-conditions cases that

state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at

834 (quoting Wilson, 501 U.S. at 302-03).  Deliberate indifference requires more than "mere

negligence" – "'ordinary lack of due care for the prisoner's interests or safety'" will not give rise

to a constitutional violation.  Farmer, 511 U.S. at 835 (quoting Whitely v. Albers, 475 U.S. 312,

319 (1986)); see also Estelle, 429 U.S. at 104. "Defendants 'must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [they] must also draw the inference.'" Williams, 666 F. Supp. 2d at 378 (quoting Phelps, 308 F.3d at 185-86 (noting that the "deliberate indifference" standard is equivalent to the "recklessness" standard in criminal law)).

   **2.** **Analysis**

   Defendants argue that "Plaintiffs' assertion that 'hydrosol' and 'strains of Legionare [sic] (bacteria) disease' are present in the water is not plausible." (Def. Br. 14) Defendants add that "even if [P]laintiffs had factual support for their allegations about the contents of the water, [P]laintiffs nevertheless fail to sufficiently connect the alleged presence of these elements to their alleged injuries in a way that states a plausible claim." (Id. at 14-15) Finally, Defendants argue that Plaintiffs fail to allege that "defendants acted with a sufficiently culpable state of mind." (Id. at 17) The Court agrees on all three points.

   Courts in this Circuit have held that the Eighth Amendment requires that "[w]ater that is suitable for drinking and bathing" be supplied to inmates. Bellezza v. Fischer, No. 05 Civ. 98 (DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006). See Cruz v. Jackson, No. 94 Civ. 2600 (RWS), 1997 U.S. Dist. LEXIS 1093, at *19-20 (S.D.N.Y. Feb. 4, 1997) ("Because contaminated water may pose serious health problems, an allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component of an Eighth Amendment claim.")[6]; Donahue v. Conn. Dep't of Corr., No. 3:11-cv-656(CFD), 2011

---

[6] Cruz makes clear that while consistently supplying contaminated drinking water may constitute an Eighth Amendment violation, "[a]n isolated serving of rusty water would not give rise to an Eighth Amendment claim." Cruz, 1997 U.S. Dist. LEXIS 1093 at *7; see also Liffiton v. Kiszewski, No. 09-CV-994A(F), 2010 WL 2869570, at *5 (W.D.N.Y. July 1, 2010) ("limited exposures [to unconstitutional conditions] do not constitute due process violations").

U.S. Dist. LEXIS 105447, at *4 (D. Conn. Sept. 16, 2011) ("potable water constitutes a basic human need").

Here, however, Plaintiffs' claims are entirely conclusory. Plaintiffs provide no factual support for the assertion that "hydrosol, contamina[n]ts" and "strains of Legionare [sic] ([b]acteria) disease" exist in the water system. (Cmplts. ¶ II(D)) Nor do Plaintiffs provide a factual basis for their belief that they suffered "[s]tomach pain[,] vomiting[,] sever[e] headaches[,] [d]ehydration[,] [and] [b]ody aches" as a result of exposure to contaminated water. Indeed, Plaintiffs fail to provide the factual detail necessary to plausibly allege that the water on Rikers Island poses an unreasonable risk of serious damage to Plaintiffs' future health. (Cmplts. ¶ III)

Several courts in this Circuit have dismissed Section 1983 claims where a plaintiff failed to plead a causal link between allegedly contaminated water and Plaintiff's alleged injury. See Bellezza, 2006 WL 3019760, at * 4 ("Bellezza's suggestion that the water caused him to suffer headaches, loose bowel movements, stained teeth, and liver or kidney damage is entirely speculative. He has provided no evidence that he sustained damage to his liver or kidneys."); Martinez v. Lape, Civ. No. 9:09-CV-0665 (TJM/RFT), 2011 U.S. Dist. LEXIS 116106, at *27-28 (N.D.N.Y. Mar. 28, 2011) (dismissing an inmate's claim that the facility's water was "interm[i]ttently discolored and smells of either chemicals or fecal/sewage matter," in part because plaintiff made "a general, blanket conclusory allegation that the 'water system is not operating on a constitutional level,'" the allegation was "utterly bereft of factual allegations which would allow for the Court to deduce the plausibility of a cognizable cause of action," and the inmate had failed to link the claim to the alleged injury); Perez v. Hawk, 302 F. Supp. 2d 9,

22 (E.D.N.Y. 2004) (dismissing inmate's Eighth Amendment claims, in part because he failed to allege a causal link between alleged chemicals in the water supply and his symptoms).

In support of their claims, Plaintiffs have attached to their Complaints copies of an undated article from the New York Daily News.  The article reports that certain correction officers at Rikers Island have alleged that they contracted cancer as a result of "toxic chemicals buried on Rikers."  See Cmplts.  The article does not address, or provide support for, Plaintiff's claim that they are forced to consume or otherwise use contaminated water.  Without additional factual allegations making it plausible to believe that the water on Rikers Island is contaminated and that contaminated water has caused Plaintiffs' alleged injuries, the injuries and causation alleged are too speculative to meet the objective prong of a "conditions of confinement" claim. Cf. Bellezza, 2006 WL 3019760, at *1, *4 (allegations that prison's water was the color of "a strong cup of coffee" and tasted like bleach "raise[d] the prospect of a constitutional violation").

As to the subjective prong and requisite state of mind – "'deliberate indifference' to inmate health or safety'" – case law requires proof that defendants were "aware of facts from which the inference could be drawn that a substantial risk of harm exists." Williams, 666 F. Supp. 2d at 378 (quoting Phelps, 308 F.3d at 185-86).  While Plaintiffs' Complaints allege that the DOC was negligent with respect to the water system, the Complaints do not contain any specific allegations against Defendants Mayor Michael Bloomberg and Board of Correction Executive Director, Richard T. Wolf.  (See Cmplts.)  Nor do the Complaints suggest that Defendants Bloomberg and Wolf have been "exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842-843 (citations omitted).  Without such information, these defendants could not draw the "inference . . . that a substantial risk of harm exist[ed]," Williams, 666 F. Supp. 2d at 378 (quoting Phelps, 308 F.3d at 185-86), and

"disregard" the "'excessive risk to inmate health or safety.'" Id. (quoting Hathaway, 37 F.3d at 66).

Plaintiffs do, however, allege that they informed DOC Commissioner Schriro of their claims. (Rivera Cmplt. ¶ IV(G) and Black Cmplt. ¶ IV(F)) The Second Circuit has noted that "[t]he deliberate indifference standard does not require a showing 'that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" Blyden, 186 F.3d at 262 (citing Farmer, 511 U.S. at 842). "Still, this standard requires that only the deliberate infliction of [cruel and unusual] punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability." Id. Here, Plaintiffs only allege that they informed the Commissioner of their concerns; they do not allege that Commissioner Schriro failed to respond to their complaints.

Even if the Complaints could be read to suggest that Commissioner Schriro failed to act, "[a] prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official . . . 'exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring.'" Mateo v. Gundrum, No. 9:10-cv-1103 (GLS/GHL), 2011 U.S. Dist. LEXIS 127981, at *1 (N.D.N.Y Aug. 30, 2011) (citing Rivera v. Goord, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000)). See also Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Because Plaintiffs have failed to plead facts sufficient to satisfy either the objective or subjective prong of a conditions of confinement claim, this claim must be dismissed.

**B.      Plaintiffs Fail to State a Claim Based on Deprivation of Medical Care**

1.     **Applicable Law**

"Although the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care, it is well-established that 'not every lapse in medical care is a constitutional wrong.'" Quezada v. Ercole, No. 09 Civ. 2832 (DLC), 2011 U.S. Dist. LEXIS 83432, at *17 (S.D.N.Y. July 29, 2011) (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citation omitted)). "To state a claim under 42 U.S.C. § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, a prisoner-plaintiff must show that a defendant acted with deliberate indifference toward the plaintiff's serious medical needs." Tiggs v. City of New York, No. 07 Civ. 7254(BSJ)(THK), 2009 WL 602991, at *2 (S.D.N.Y. Feb. 24, 2009) (citing Estelle, 429 U.S. at 104-05; Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000)). "The deliberate indifference standard embodies both objective and subjective elements: (1) 'the alleged deprivation must be, in objective terms, "sufficiently serious"'; and (2) 'the charged official must act with a sufficiently culpable state of mind.'" Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

The determination of "whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin, 467 F.3d at 279. The first inquiry is whether "the prisoner was actually deprived of adequate medical care." Id. Failing "to take reasonable measures" in response to a medical condition can lead to liability. Id. (citing Farmer, 511 U.S. at 847). Second, a court must determine whether the inadequacy in medical care is "sufficiently serious." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32-33 (1993)). For a medical need to meet this objective element, it must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." Swindell v. Supple, No. 02 Civ. 3182 (RWS), 2005 U.S. Dist. LEXIS 1517, at *16 (S.D.N.Y. Feb. 3, 2005) (citing Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.

1990) (Pratt, J., dissenting)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Salahuddin, 467 F.3d at 280 (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

In considering whether Section 1983 plaintiffs have satisfied the objective prong of this inquiry, courts have noted that "complaints of abdominal pain, vomiting, heartburn, constipation, body odor and extreme body heat d[o] not constitute a serious medical need." Ross v. McGinnis, No. 00-CV-0275, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004)). See also Abreu v. Nicholls, No. 04 Civ. 7778 (DAB) (GWG), 2007 WL 2111086, at *17-18 (S.D.N.Y. July 24, 2007), vacated in part on other grounds, 368 Fed.Appx. 191 (2d Cir. 2010), (quoting Hathaway, 37 F.3d at 66) ("a headache, dizziness, and flu-like throat problems . . . cannot be characterized as "condition[s] of urgency . . . that may produce death, degeneration, or extreme pain"); Ford v. Phillips, No. 05 Civ. 6646 (NRB), 2007 U.S. Dist. LEXIS 25226, at *12 & n.70 (S.D.N.Y. Mar. 27, 2007) (abrasions, minor bruises, bleeding, scratches, blood in the urine, vomiting blood, persistent abdominal and groin pain, headaches and dizzy spells do not constitute serious medical need); Qader v. New York, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (dizziness and "terrible headache"); Hutchinson v. New York State Corr. Officers, No. 02 Civ. 2407 (CBM), 2003 U.S. Dist. LEXIS 15417, at *5 (S.D.N.Y. Sept. 4, 2003) ("digestion problems, weight loss, and dizziness").

The second requirement is subjective:  the prison official must act with a "sufficiently culpable state of mind" in treating or not treating the prisoner's medical needs. Salahuddin, 467 F.3d at 280 (citation omitted); see also Caiozzo, 581 F.3d at 71 (2d Cir. 2009).

The deliberate indifference standard here is similar to the standard applied to a conditions of confinement claim. "A prison official need not expressly intend to inflict pain, but a plaintiff must establish that the official acted in a manner equaling criminal recklessness." Swindell, 2005 U.S. Dist. LEXIS 1517, at *17 (citing, Hathaway, 99 F.3d at 553). "A plaintiff's disagreement with his treatment or a difference of opinion over the type or course of treatment does not support a claim of deliberate indifference." Swindell, 2005 U.S. Dist. LEXIS 1517, at *18 (citing Estelle, 429 U.S. at 107-08; Chance, 143 F.3d at 703; Brown v. Selwin, 250 F. Supp. 2d 299, 307 (S.D.N.Y. 1999)). Moreover, "prison officials 'have broad discretion in determining the nature and character of medical treatment afforded to inmates, and inmates do not have the right to the treatment of their choice.'" Swindell, 2005 U.S. Dist. LEXIS 1517, at *18-19 (quoting Brown, 250 F. Supp. 2d at 307).

### 2.   Analysis

Defendants argue that Plaintiffs have not demonstrated that their medical needs are "sufficiently serious," noting that Plaintiffs failed to allege "any factual detail" about their alleged conditions, such as "when and for how long they occurred." (Def. Br. 16) Defendants further argue that Plaintiffs have failed to properly allege Defendants' culpable state of mind. (Id.)

This Court concludes that Plaintiffs have not pled facts sufficient to plausibly claim that their injuries were objectively serious enough to fall within the protection of the Constitution. "The circumstances which courts in this circuit have found to satisfy the objective seriousness requirement have generally entailed a needlessly prolonged period of extreme pain or the inexplicable failure to treat a life-threatening or life-altering illness." Santiago v. Pressley, No. 10 Civ. 4797(PAE), 2011 WL 6748386, at *3 (S.D.N.Y. Dec. 23, 2011) (citing Hernandez v.

14

Keane, 341 F.3d 137, 141 (2d Cir. 2003) (bullet wound left shrapnel in plaintiff's hand, which

went untreated); Chance, 143 F.3d at 702 (dental condition which led to extreme pain for at least

six months); Hathaway, 37 F.3d at 65, 67 (broken pins in an inmate's hip, which caused

persistent pain for a year)). "The facts alleged here are a far cry from those circumstances."

Santiago v. Pressley, 2011 WL 6748386, at *3.  Because Plaintiffs have failed to plead facts

demonstrating sufficiently serious injuries, this Court need not assess whether Plaintiffs have

sufficiently alleged Defendants' culpable state of mind.

   To the extent that Plaintiffs' Section 1983 claims are predicated on Defendants'

alleged failure to provide adequate medical care, those claims must be dismissed.

## III. PLAINTIFFS HAVE FAILED TO ALLEGE THE PERSONAL INVOLVEMENT OF ANY DEFENDANT IN ANY VIOLATION OF THEIR RIGHTS

### 1. Applicable Law

   "It is well settled in this Circuit that 'personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950

F.2d 880, 885 (2d Cir. 1991); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." Iqbal 556 U.S. at 676; Hernandez, 341 F.3d at 144 ("supervisor liability in a §

1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat

superior"); Garcia v. Watts, No. 08 Civ. 7778 (JSR)(HBP), 2009 WL 2777085 at *12- 13

(S.D.N.Y. Sept. 1, 2009).  Mere presence in the "prison chain of command" is not sufficient to

demonstrate personal involvement for purposes of Section 1983.  Ayers v. Coughlin, 780 F.2d

205, 210 (2d Cir. 1985) (per curiam).

In <u>Colon v. Coughlin</u>, 58 F.3d 865 (2d Cir. 1995), the Second Circuit stated that

> [t]he personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of [the plaintiffs] by failing to act on
> information indicating that unconstitutional acts were occurring.

<u>Id.</u> at 873.[7]

In <u>Johnson v. Wright</u>, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002), the court

addressed whether supervisors can be held liable for failing to respond to prisoner complaints:

> [A] number of courts have held that "it is well-established that an
> allegation that an official ignored a prisoner's letter of protest and
> request for an investigation of allegations made therein is

---

[7] "The [Second Circuit] has not yet definitively decided which of the <u>Colon</u> factors remains a
basis for establishing supervisory liability in the wake of <u>Iqbal</u>, and no clear consensus has
emerged among the district courts within the circuit." <u>Aguilar v. Immigration and Customs</u>
<u>Enforcement Div. of the U.S. Department</u>, 811 F.Supp.2d 803, 814 (S.D.N.Y. 2011).
"Several district court decisions have concluded that by rejecting the argument that 'a
supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the
supervisor's violating the Constitution,' <u>Iqbal</u>, 129 S.Ct. at 1949, <u>Iqbal</u> nullified several of the
<u>Colon</u> factors." <u>Aguilar</u>, 811 F.Supp.2d at 814-15 (citing <u>Bellamy v. Mount Vernon Hosp.</u>, 07
Civ. 1801, 2009 WL 1835939 at *4 (S.D.N.Y. June 26, 2009) ("Only the first and part of the
third <u>Colon</u> categories pass <u>Iqbal</u>'s muster – a supervisor is only held liable if that supervisor
participates directly in the alleged constitutional violation or if that supervisor creates a policy or
custom under which unconstitutional practices occurred.").

Other courts in the Circuit "have questioned whether <u>Iqbal</u> changed the standard of supervisory
liability outside of the equal protection context." <u>Aguilar</u>, 811 F.Supp.2d at 815; <u>see Sash v.</u>
<u>United States</u>, 674 F.Supp.2d 531, 544 (S.D.N.Y.2009) ("Where the alleged constitutional
violation involved 'invidious discrimination in contravention of the First and Fifth
Amendments,' <u>Iqbal</u> held that 'plaintiff must plead and prove that the defendant acted with
discriminatory purpose,' whether the defendant is a subordinate or a supervisor. . . . Where the
constitutional claim does not require a showing of discriminatory intent, but instead relies on the
unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments,
the personal involvement analysis set forth in <u>Colon v. Coughlin</u> may still apply.")

It is unnecessary to resolve this issue here, because the allegations against the individual
defendants do not satisfy any of the <u>Colon</u> factors.

insufficient to hold that official liable for the alleged violations."
Greenwaldt v. Coughlin, 1995 WL 232736, at *4 (S.D.N.Y. Apr.
19, 1995) (citations omitted); accord Rivera v. Goord, 119
F.Supp.2d at 344 (allegations that inmate wrote to prison officials
and was ignored insufficient to hold those officials liable under
section 1983); Woods v. Goord, 1998 WL 740782, at *6 (S.D.N.Y.
Oct.23, 1998) ("Receiving letters or complaints . . . does not render
[prison officials] personally liable under § 1983."); Watson v.
McGinnis, 964 F.Supp. at 130 ("The law is clear that allegations
that an official ignored a prisoner's letter are insufficient to
establish liability.") (citations omitted). As one court noted, "if
mere receipt of a letter or similar complaint were enough, without
more, to constitute personal involvement, it would result in
liability merely for being a supervisor, which is contrary to the
black-letter law that § 1983 does not impose respondeat superior
liability." Walker v. Pataro, 2002 WL 664040, at *12 (S.D.N.Y.
Apr.23, 2002) (emphasis in original). Personal involvement will
be found, however, where a supervisory official receives and acts
on a prisoner's grievance or otherwise reviews and responds to a
prisoner's complaint. See, e.g., Ramos v. Artuz, 2001 WL 840131,
at *8-*10 (S.D.N.Y. July 25, 2001) (personal liability where prison
official "sent plaintiff numerous letters containing some
explanation or justification concerning the issues raised by
plaintiff"); cf. Johnson v. Bendheim, 2001 WL 799569, at *6
(S.D.N.Y. July 13, 2001) (motion to dismiss denied as to prison
official who received prisoners' grievances and denied them);
James v. Artuz, 1994 WL 174005, at *7 (S.D.N.Y. May 4, 1994)
(denying summary judgment where a prison official conducted a
de novo review of a prison disciplinary hearing); Van Pelt v. Finn,
1993 WL 465297, at *6 (S.D.N.Y. Nov.12, 1993) (prison official
demonstrated personal involvement when he reviewed plaintiff's
grievances).

Johnson v. Wright, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002)).

Where "a complainant names a defendant in the caption but the complaint

contains no substantive allegation against the defendant, dismissal . . . is appropriate." Garcia,

2009 WL 2777085, at *13 (collecting cases).

2.   **Analysis**

Because the Complaints do not contain any substantive allegations against Mayor Bloomberg or Board of Correction Executive Director Wolf, the Complaints must be dismissed as to them for failure to allege personal involvement. Id.

Applying the Colon factors to Defendant Schriro, this Court finds that Plaintiffs have not pled facts sufficient to demonstrate that she was personally involved in the alleged violation of their constitutional rights. First, Plaintiffs do not allege that the Commissioner "directly participated in the violation." Second, the allegation that "negligence and indifference by the Dept[.] of [C]orrection to circumvent and conceal the contaminated water [s]ystem" does not amount to an allegation that the Commissioner "created a policy or custom under which the violation occurred." Third, the Complaints do not claim that the Commissioner "was grossly negligent in supervising subordinates who committed the violation." Rahman, 607 F. Supp. 2d at 585 (citing Hasty, 490 F.3d at 152-53).

With respect to the second and fifth Colon factors, Plaintiffs allege that they complained to Commissioner Schriro about the contaminated water and inadequate medical care. (Cmplts. ¶¶ IV(E), IV(F)) As noted above, however, 'it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." Greenwaldt, 1995 WL 232736, at *4; Rivera v. Goord, 119 F.Supp.2d at 344 (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under Section 1983); Woods v. Goord, 1998 WL 740782, at *6 ("Receiving letters or complaints . . . does not render [prison officials] personally liable under § 1983."); Watson v. McGinnis, 964 F.Supp. at 130 ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") Assuming arguendo that Commissioner Schriro received Plaintiffs'

18

complaints and failed to act on them, this is not sufficient to establish supervisory liability.

"'Were it otherwise, virtually every prison inmate who sues for constitutional torts by [prison officials] could name the [supervisor] as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the [supervisor].'" Voorhes v. Goord, No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at * 5 (S.D.N.Y. Feb. 24, 2006) (quoting Thompson v. New York, 99CIV9875(GBD)(MHD), 2001 WL 636432, at * 7 (S.D.N.Y. Mar. 15, 2001)).

Because Plaintiffs fail to allege the personal involvement of Defendants Bloomberg, Wolf, and Schriro in the alleged constitutional violations, the Complaints must be dismissed as to Defendants Bloomberg, Wolf, and Schriro.

## IV. THE NEW YORK CITY DEPARTMENT OF CORRECTION AND CORRECTIONAL HEALTH SERVICES ARE NOT SUABLE ENTITIES

Defendants argue that the DOC and CHS are not suable entities, and therefore the Complaints must be dismissed as to them. "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." New York City Charter Ch. 17, § 396. See Walker v. N.Y. City Dep't of Corr., No. 01 Civ. 1116 (LMM), 2008 WL 4974425, at *9 (S.D.N.Y. Nov. 18, 2008) (citing Adams v. Galletta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997)) (It is "well-established that under the New York City Charter, municipal agencies are not discrete legal entities and therefore cannot be named as defendants in suits for damages.") "[W]here a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity." Adams, 966 F. Supp. at 212. See Echevarria v. Dep't of Corr. Servs. and City of New York, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999). Accordingly, Plaintiffs' claims against DOC must be dismissed.

19

In addition, Defendants maintain that CHS is a bureau within the New York City Department of Health and Mental Hygiene ("DOHMH"), and therefore is not itself a legal entity capable of being sued. (Def. Mem. at 9-10)  Under Chapter 22, Section 564 of the New York City Charter, DOHMH, which is responsible for health services for the city's prisoners, is a suable entity.  New York City Charter Ch. 22, § 564 ("The department may sue and be sued in and by the proper name of 'Department of Health and Mental Hygiene of the City of New York . . . .'"); Ch. 22, § 556 (d)(8).  CHS's capacity to be sued "is determined by New York law."  Gear v. Dep't of Educ., No. 07 Civ. 11102 (NRB), 2009 U.S. Dist. LEXIS 17885, at *7-8 (S.D.N.Y. Feb. 23, 2009) (citing Gonzalez v. The City of New York, No. 98 Civ. 6081, 1999 U.S. Dist. LEXIS 11413, at *1 (S.D.N.Y. July, 28 1999); Fed. R. Civ. P. 17(b)(3)).

In Gear, the court found that the Office of Equal Employment Opportunity ("OEO") – part of the Department of Education (which is a suable entity under the City Charter) – "does not have a legal existence separate from the Department of Education."  Id. (citing Gonzalez, 1999 U.S. Dist. LEXIS 11413, at *1).  The court dismissed all claims against the OEO: "dismissing the [O]EO from the suit does not prejudice plaintiff's ability to recover in this action, as any claims she is bringing against the [O]EO are identical in substance to the claims she is bringing against the Department of Education, which is a suable entity."  Id.  Like the OEO, CHS is an internal bureau of DOHMH with no separate legal existence.  Accordingly, Plaintiffs' claims against CHS must be dismissed.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM
##        FOR MUNICIPAL LIABILITY UNDER MONELL

Municipal liability under Section 1983 requires proof that a particular constitutional or statutory violation was the result of an official policy; "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is

20

when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). The Second Circuit has explained that a plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officers. Second, the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).

"'[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). "[A] conclusory, boilerplate assertion of a municipal policy or custom [is] insufficient to survive a motion to dismiss." Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (citing Smith v. City of New York, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003)). See also Brodeur v. City of New York, No. 99 Civ. 661, 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (complaint against City dismissed where it "asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom").

Here, Plaintiffs have not pled facts demonstrating that there is an official policy authorizing, sanctioning, encouraging, or promoting the alleged unconstitutional conditions. Plaintiffs' broad allegation that DOC has not addressed alleged problems with the water plant and sewage system at Rikers Island is not sufficient. Accordingly, there is no basis for imposing municipal liability.

## VI.    LEAVE TO AMEND

The Second Circuit has cautioned that a pro se litigant's complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). A court may dismiss a claim without leave to amend, however, when "the substance of the claim pleaded is frivolous on its face." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citing Moorish Sci. Temple v. Smith, 693 F.2d 987, 990 (2d Cir. 1982)). An action is considered frivolous when, inter alia, "the claim is 'based on an indisputably meritless legal theory.'" Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam ) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The Court is doubtful that Plaintiffs can plead claims that will survive a motion to dismiss. Nonetheless, given the standard set by the Second Circuit, the Court will permit Plaintiffs to submit motions for leave to file an amended complaint. Any such motion is to be filed by September 21, 2012. A copy of the proposed amended complaint must be included as an exhibit to Plaintiffs' motion papers.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss in 11 Civ. 629 and 11 Civ. 4325 is GRANTED. The Clerk of the Court is directed to terminate the motions (11 Civ. 629 Dkt. No. 22; 11 Civ. 4325 Dkt. No. 15).

The Clerk is ordered to mail a certified copy of this order to pro se plaintiffs Felix Rivera, B&C# 4411001466, OBCC, 1600 Hazen Street, East Elmhurst, NY 11370; James Drummond, B&C# 1411017498, OBCC, 1600 Hazen Street, East Elmhurst, NY 11370; Valarae Green, 11A1974, Clinton Correctional Facility, P.O. Box 2000, Dannemora, NY 12929; Sonny

Black, 980-10-00522, GMDC, 15-15 Hazen Street, East Elmhurst, NY 11370; Damont Green,

B&C# 3491019348, GMDC, 15-15 Hazen Street, East Elmhurst, NY 11370.

Dated: New York, New York
       August 27, 2012

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge

Copy To:

Felix Rivera
B&C# 4411001466, OBCC
1600 Hazen Street,
East Elmhurst, NY 11370

James Drummond,
B&C# 1411017498, OBCC
1600 Hazen Street,
East Elmhurst, NY 11370

Valarae Green, 11A1974,
Clinton Correctional Facility
P.O. Box 2000,
Dannemora, NY 12929

Sonny Black
980-10-00522, GMDC
15-15 Hazen Street,
East Elmhurst, NY 11370

Damont Green
B&C# 3491019348, GMDC
15-15 Hazen Street,
East Elmhurst, NY 11370